IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

ANGEL HINDS KIRK, )
Plaintiff, )
v. )
NATIONAL CARRIERS, INC., )
Defendant. )

CIVIL ACTION

No. 05-1199-MLB

**MEMORANDUM AND ORDER**

This case comes before the court on National's motion to strike and/or dismiss plaintiff's amended complaint. (Docs. 23, 24). The motion has been fully briefed and is ripe for decision. (Docs. 25, 27, 28, 29, 30). National's motion is sustained, for the reasons herein.

**I. FACTS AND PROCEDURAL HISTORY**

Plaintiff is a licensed commercial truck driver who resides in Texas. On November 9, 2001, plaintiff entered into a contract entitled "Independent Contractor Agreement and Equipment Lease" (IC Agreement) with National Carriers, Inc. (National). The IC Agreement did not contain a term, but could be terminated in accordance with the agreement. The termination clause stated that "[t]his Agreement may be terminated by either party with or without cause upon prior written notice of one (1) day to the other, provided, however, that Carrier [National] may terminate this Agreement at any time in the event of default by Independent Contractor [plaintiff]." (Doc. 1, exh. A at 2, 7).

The following day, November 10, 2001, plaintiff entered into an

"Equipment Lease" with NCI Leasing, Inc. (NCI). The Equipment Lease stated that the term of the agreement was to begin on November 10 for a period of two hundred eight weeks. The Equipment Lease provided that in the event the IC Agreement was terminated, plaintiff "shall immediately return the equipment to [NCI] at [plaintiff's] expense to a place designated by [NCI]." (Doc. 1, exh. B at 1-2).

On September 16, 2002, plaintiff sustained a work related injury. Plaintiff performed her contractual duties until October 9, 2002. At that time, plaintiff turned in a notice of a workers' compensation claim. Plaintiff also informed National and NCI that she would take a leave to seek medical treatment. On October 10, 2002, plaintiff's contracts were terminated after she informed National and NCI that she was physically unable to work. (Doc. 21 ¶¶ 11-12).

On June 28, 2005, plaintiff filed a complaint alleging breach of contract, wrongful termination, retaliatory discharge, defamation and civil conspiracy claims against both National and NCI. Both defendants moved to dismiss the complaint in its entirety on the basis of improper venue, lack of subject matter jurisdiction and failure to state a claim. On November 21, 2005, the court entered an order dismissing all claims against NCI and one claim of retaliatory discharge claim against National. (Doc. 21). The court denied National's motion to dismiss plaintiff's breach of contract, wrongful termination, defamation and conspiracy claims pending plaintiff's filing of an amended complaint which was to be accomplished on or before December 7, 2005.

Plaintiff did not file an amended complaint on or before December 7, 2005. On December 23, 2005, National filed a "Response to

Plaintiff's Failure to Elect Between Causes of Action." (Doc. 14). On January 11, 2006, the court entered an order to show cause. (Doc. 17). On January 31, 2006, plaintiff responded to the order to show cause and filed an amended complaint, which states only breach of contract and conspiracy claims against National. (Docs. 20, 21).

National has moved to strike plaintiff's amended complaint based on her failure to comply with this court's orders. In the alternative, National has moved to dismiss the amended complaint pursuant to Rule 12(b)(6).

**II. ANALYSIS**

**A. Motion to Strike**

National asserts that the court should strike plaintiff's amended complaint for her failure to comply with this court's November 21 and January 11 orders.

> It is within a court's discretion to dismiss a case if, after considering all the relevant factors, it concludes that dismissal alone would satisfy the interests of justice. Before imposing dismissal as a sanction, a district court should ordinarily evaluate the following factors on the record: (1) the degree of actual prejudice to the [other party]; (2) the amount of interference with the judicial process; … (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.

Gripe v. City of Enid, Okl., 312 F.3d 1184, 1188 (10th Cir. 2002).

While the court did warn plaintiff that noncompliance could result in dismissal, plaintiff has explained the reason for noncompliance. The court does not condone plaintiff's tardiness, but a sanction of dismissal is a harsh punishment and not warranted in this court without some showing of actual prejudice by National. National has failed to present any evidence of prejudice other than

time and money spent on litigation. (Doc. 29 at 2). Since plaintiff's actions have only delayed the filing of her amended complaint by one and one-half months and this delay necessitated a filing by National of a three-page motion to strike, the court finds that the time spent due to plaintiff's delay does not amount to a significant degree of prejudice that would warrant the extreme sanction of dismissal. See Meade v. Grubbs, 841 F.2d 1512, 1520 (10th Cir. 1988)("Dismissal is a harsh sanction and should be resorted to only in extreme cases.")

National's motion to strike plaintiff's amended complaint is denied.

**B. Motion to Dismiss Standards: FRCP 12(b)(6)**

The standards this court must utilize upon a motion to dismiss are well known. This court will dismiss a cause of action for a failure to state a claim only when it appears beyond a doubt that the plaintiff can prove no set of facts that would entitle legal relief or when an issue of law is dispositive. See Ford v. West, 222 F.3d 767, 771 (10th Cir. 2000); Robinson v. Kansas, 117 F. Supp.2d 1124, 1129 (D. Kan. 2000). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to plaintiff. See Ford, 222 F.3d at 771; Davis v. United Student Aid Funds, Inc., 45 F. Supp.2d 1104, 1106 (D. Kan. 1998). Conclusory allegations, however, have no bearing upon this court's consideration. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based"); Overton v. United States, 74 F. Supp. 2d 1034, 1041 (D. N.M.

1999) (citing Dunn v. White, 880 F.2d 1188, 1190 (10th Cir. 1989)). In the end, the issue is not whether plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claims. See Robinson, 117 F. Supp.2d at 1129.

**C. 12(b)(6) Motion to Dismiss Civil Conspiracy Claim**

National has moved to dismiss plaintiff's claim for civil conspiracy on the basis that National and NCI could not have conspired with one another since NCI is a wholly owned subsidiary of National. The amended complaint alleges that National is a for profit corporation but is silent on NCI's relationship with National. (Doc. 21). "On a Rule 12(b)(6) motion, a court's factual inquiry is limited to the well-pleaded facts in the complaint, which the court must assume are true for purposes of the motion." Burnham v. Humphrey Hospitality Reit Trust, Inc., 403 F.3d 709, 713 (10th Cir. 2005). Accordingly, National's statement in its motion that NCI is a wholly owned subsidiary of National cannot be considered on a motion to dismiss since this alleged fact is not contained in the amended complaint.

National asserts in its reply brief that its counsel's statement is sufficient to be considered as a fact under Fed. R. Civ. P. 11(b). The court disagrees. Rule 11(b) provides:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

Rule 11 does not establish a procedure for turning a counsel's statement in a pleading into evidence. In deciding a Rule 12(b)(6) motion, a federal court may consider only facts alleged within the complaint. There are two exceptions to this rule. First, a court may review "mere argument contained in a memorandum in opposition to dismiss" without converting the Rule 12(b)(6) motion into a motion for summary judgment. Counsel's statement regarding a relationship between National and NCI is not intended as argument. Second, "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." County of Santa Fe, N.M. v. Public Serv. Co. of New Mexico, 311 F.3d 1031, 1035 (10th Cir. 2002). There is no authenticated document referred to in the complaint which spells out the relationship between National and NCI.

Nevertheless, for the following reasons, plaintiff's civil conspiracy claim fails as a matter of law because it is not predicated on an underlying tort. Chief Judge Lungstrum addressed this issue very recently:

> The issue presented with respect to this claim, then, is whether Farmland's civil conspiracy claim may be predicated on its breach of contract claim. Mid-America contends that it cannot, citing Meyer Land & Cattle Co. v. Lincoln County Conservation District, 29 Kan. App.2d 746, 31 P.3d 970 (2001), for the proposition that a civil conspiracy claim must be based "on a valid, actionable underlying tort." Id. at 753, 31 P.3d at 976 (citing Stoldt v. City of Toronto, 234 Kan. 957, 967, 678 P.2d 153 (1984)). On the other hand, Farmland contends that it can, citing Indy Lube Investments, L.L.C. v. Wal-Mart Stores, Inc., 199 F. Supp.2d 1114 (D. Kan. 2002), and Pizza Management, Inc. v. Pizza Hut, Inc., 737 F. Supp. 1154 (D. Kan. 1990), for the proposition that "'Kansas courts have recognized a conspiracy to procure or induce a breach of contract.'" Indy Lube Invs., 199 F. Supp.2d at 1126 (quoting Pizza Mgmt., 737 F. Supp. at 1165).

In resolving this issue, absent controlling precedent this court must attempt to predict how the Kansas Supreme Court would decide this matter. Royal Maccabees Life Ins. Co. v. Choren, 393 F.3d 1175, 1180 (10th Cir. 2005) (federal court sitting in diversity must apply state law as announced by the highest state court). The court must "follow any intermediate state court decision unless other authority convinces [it] that the state supreme court would decide otherwise." Save Palisade FruitLands v. Todd, 279 F.3d 1204, 1207 n. 1 (10th Cir. 2002). The court should consider analogous decisions by the state supreme court, decisions of lower courts in the state, decisions of federal and other state courts, and the general weight and trend of authority. Progressive Cas. Ins. Co. v. Engemann, 268 F.3d 985, 987-88 (10th Cir. 2001). Dicta from the state supreme court represents the court's own comment on the development of state law and "is an appropriate source from which this prediction may be made." Carl v. City of Overland Park, 65 F.3d 866, 872 (10th Cir. 1995).

Applying this standard, the court will follow the decision of the Kansas Court of Appeals in Meyer Land & Cattle Co. that a civil conspiracy claim must be based on a valid, actionable, underlying tort because no authority exists to persuade the court that the Kansas Supreme Court would decide otherwise. The Kansas Supreme Court has stated that civil "conspiracy is not actionable without commission of some wrong giving rise to a cause of action independent of the conspiracy." State ex rel. Mays v. Ridenhour, 248 Kan. 919, 927, 811 P.2d 1220, 1226 (1991); accord Stoldt v. City of Toronto, 234 Kan. at 967, 678 P.2d at 161. Additionally, in discussing civil conspiracy in Mays, the Kansas Supreme Court looked to the Restatement (Second) of Torts § 876 (1977) for guidance. 248 Kan. at 936, 811 P.2d at 1231-32. The court noted that § 876(a) defines civil conspiracy and states that a person is subject to liability for "harm resulting to a third person from the tortious conduct of another" if he or she "does a tortious act in concert with the other or pursuant to a common design." See also Restatement § 876 cmt. c ("In order for the rule stated in Clause (a) to be applicable, it is essential that the conduct of the actor be in itself tortious.").

Farmland's reliance on the statements in Indy Lube Investments and Pizza Management is misplaced for a number of reasons. First and foremost, the court must look to the decisions of Kansas state courts, not Kansas federal courts, in attempting to predict how the Kansas Supreme Court would decide this issue. Moreover, in Indy Lube Investments the court declined to dismiss the civil conspiracy claim because it was based in part on a tortious interference claim. 199 F. Supp.2d at 1126. Also, Pizza Management pre-dated the Kansas Court of Appeals' opinion in Meyer Land & Cattle Co., and thus is of questionable value insofar as it is contrary to the Kansas Court of

> Appeals' statement that a civil conspiracy claim must be based on a valid, actionable underlying tort. Indeed, in Pepsi-Cola Bottling Co. v. PepsiCo, Inc., 431 F.3d 1241 (10th Cir. 2005), the Tenth Circuit, citing Stoldt, affirmed the district court's grant of summary judgment on a civil conspiracy claim where the facts did not create a triable issue on the underlying tort claims. Id. at 1268.
>
> In sum, then, this court predicts that the Kansas Supreme Court would require that a civil conspiracy claim be predicated on a valid, actionable underlying tort rather than a mere breach of contract claim. Because Farmland has no such tort claim against Mid-America, the court will dismiss Farmland's civil conspiracy claim.

JP Morgan Trust Co. Nat. Ass'n v. Mid-America Pipeline Co., ---F. Supp.2d---, 2006 WL 302758, **21 -22 (D. Kan. Feb. 7, 2006).

This court agrees with the analysis of Chief Judge Lungstrum and finds that plaintiff's claim for civil conspiracy must be dismissed since it is not predicated on a valid, actionable underlying tort.[1] In the absence of a tort, there can be no claim for punitive damages. "Breach of contract, standing alone, does not call for punitive damages even if the breach is intentional and unjustified, but such damages are allowable if there is some independent tort present." Farrell v. General Motors Corp., 249 Kan. 231, 247, 815 P.2d 538, 549 (1991). Thus, if this case is to survive National's motion to dismiss, it must do so solely on the breach of contract claim.

**D. Motion to Dismiss Breach of Contract Claim for Lack of Subject Matter Jurisdiction**

National asserts that plaintiff's sole remaining claim of breach of contract must be dismissed for lack of subject matter jurisdiction because her recoverable damages would at most amount to $1300.

---

[1] Plaintiff's claim cannot be actionable on any alleged violation of public policy since plaintiff's claims for retaliation have been barred by the statute of limitations. Doc. 12 at 13; Meyer Land & Cattle Co., 29 Kan. App.2d at 754-55.

Plaintiff responds that the IC Agreement must be read in conjunction with the contract she entered into with NCI (Equipment Lease). When considered together, plaintiff asserts that the IC Agreement had an effective term of four years and that over the term, her recoverable damages exceed $75,000. (Doc. 1 at exhs. A, B).

The court declines to read the two contracts together. National is not a party to the Equipment Lease and plaintiff has not directed the court to a provision of the IC Agreement that states the Equipment Lease has been incorporated into the IC Agreement.[2] The IC Agreement, however, clearly states that the agreement has no term. Accordingly, National could terminate the IC Agreement with or without cause as long as it gave notice. Assuming National failed to give notice, plaintiff's damages are limited to the one-day notice period. Hermelink v. Dynamex Operations East, Inc., 109 F. Supp.2d 1299, 1307 (D. Kan. 2000). Plaintiff has not disputed that the amount of monies she would have earned in one day would be approximately $1300.

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim. But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed. Events

---

[2] As previously noted, the Equipment Lease terminated upon the termination of the IC Agreement. (Doc. 1, exh. B ¶ 5).

> occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction.
>
> Under the legal certainty rule, it must appear to the district court to a "legal certainty" that the plaintiff's claim is really for less than the jurisdictional amount in order to justify dismissal based on an insufficient jurisdictional amount. The burden is on the party asserting jurisdiction to show it is not a legal certainty that the amount in controversy is less than the jurisdictional amount.

Cabral v. Willard, 333 F. Supp.2d 1108, 1111-12 (D. Kan. 2004). The court finds that plaintiff's damages cannot, by a legal certainty, exceed the amount in controversy requirement of this court.

Plaintiff's remaining claim for breach of contract is accordingly dismissed for lack of subject matter jurisdiction.

**III. CONCLUSION**

National's motion to strike plaintiff's amended complaint (Doc. 23) is denied. National's motion to dismiss plaintiff's amended complaint (Doc. 24) is granted.

A motion for reconsideration of this order is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in Comeau

v. Rupp. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

IT IS SO ORDERED.

Dated this 9th day of March 2006, at Wichita, Kansas.

s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE